**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN J. HRIBEK** | § | |
| | § | |
| **v.** | § | **A-06-CA-165 LY** |
| | § | |
| **BUC-EE'S, LTD., AKA BU-CEE'S, INC.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT COURT

Before the Court are: Defendant's Motion for Summary Judgment filed March 30, 2007 (Clerk's Doc. No. 18); Plaintiff's Response to Defendant's Motion for Summary Judgment filed April 12, 2007 (Clerk's Doc. No. 21); Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim (Clerk's Doc. No. 20); and Defendant's Response to Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim (Clerk's Doc. No. 22). The District Court referred these motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I.  FACTUAL BACKGROUND

**A.     Summary Judgment Standard**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  When the party seeking summary judgment is seeking summary judgment on a claim for which the non-moving party would bear the burden of proving at trial, the party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).  The party can do this by: (1) submitting summary judgment evidence that negates the existence of a material element of the opposing party's claim, or (2) by showing there is no evidence to support an essential element of the opposing party's claim. *Celtotex*, 477 U.S. 322-25.  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533.  If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate.  Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc,*.44 F.3d 308, 312 (5th Cir. 1995).  Rather, the non-moving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997).  The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could

2

find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.      Undisputed Facts**.

Applying the above standard, and drawing all inferences in favor of Plaintiff, the summary judgment record reflects the following facts.  Defendant Buc-ees owns and operates 22 convenience stores in several counties in southern  Texas. Plaintiff John J. Hribek ("Hribek"), was hired by Buc-ees on September 2, 2002, as a manager in training. He was eventually promoted to the position of store manager of Store 0016, located in Giddings, Texas.  He remained in the position of store manager until he submitted his resignation on October 5, 2004. As store manager, Hribek was in charge of screening employees for employment, training scheduling and supervising employees, maintaining the appearance of the store, paperwork for day to day operations, ordering inventory for the store, and fuel pricing.

Buc-ee's implemented its current in-store inspection process in 2003.  The in-store inspection process included three to four comprehensive inspections each year with a detailed scoring process. Under Buc-ee's scoring procedure, a score of 95 to 100% is "great;" a score of 90 to 94% is "good;" 85 to 89% is "must improve;" and  under 85% is unacceptable.  Each store also had regular monthly audits and Buc-ee's employed "secret shoppers" who rated the stores on cleanliness, inventory, and customer service.

Store 0016 was inspected seven times while Hribek was the store manager.  On March 26, 2003, the store received a 79% rating.  On June 14, 2003, Hribek's store received a 87% rating. In September 2003 the store received a 95% rating.  In November 2003, the store received a 93%

rating. In March of 2004, it received a 87% rating, in June 2004 an 81% rating, and an 83% rating

in September 2004.   On May 14, 2004, a secret shopper noted several deficiencies related to

housekeeping in the store. Plaintiff received a written reprimand on June 23, 2004, stating:

> John, for the past couple of months your performance as manager has lacked in the
> following areas. Store organization. Cleanliness, Scheduling and Inventory
> Management. Immediate attention and correction of these areas are necessary for you
> to maintain your employment at Buc-ee's.   Store must be kept clean, organized,
> staffed and completely in stock. Examples of inefficiencies include. When  I ask you
> to get the sliced meat at a reasonable thickness and I had to ask you three times
> before it happened.  Being out of products such as Beef jerkey products.  Not having
> cinnamon rolls made all the time. The back room being a mess with debris and filth.
> Not having someone in charge of the location who is capable of managing it when
> you are gone.  See attached Inspection. Dated 6/11/04 and List to do Dated 6/02/04.

On September 10, 2004, Hribek was diagnosed with a hernia. He requested and was granted vacation

leave starting September 22, 2004, to have the hernia surgically repaired.

On September 14, 2004, Rhonda Roose was sent by management to help fix the problems

at the store.  After working there several days, she gave Plaintiff a to do list. On September 17, 2004,

Roose sent an e-mail to Paul Ezell, who was Buc-ee's Marketing Director explaining what she had

done and attaching a to do list. On September 24, 2001, Ezell sent an e-mail to Hribek stating, "this

will be the only time that we will go to the store and do this. You are on your own now to make it

happen.  This was pretty disappointing, and we should not have to do this for you."

Hribek had his scheduled surgery and returned to work on October 4, 2004. He was released

for work with the limitations of a 20 pound lifting restriction during the first week and a 40 pound

lifting restriction the second week. On or about October 5, 2004, Pete Alexander, assistant to the

owner of Buc-ee's, traveled to the Giddings store to interview job applicants. It is undisputed that

during this visit, Alexander communicated to Hribek that a decision was going to be made about

Hribek's employment in the near future.  Alexander also communicated that Buc-ee's would be willing to offer a severance package if he elected to resign.  Hribek prepared a letter of resignation on October 5, 2004, effective October 26, 2004.  In exchange for signing a Full and Final Release, Buc-ee's paid Plaintiff three weeks pay, vacation pay, and a prorated portion of his bonus.  The funds were direct deposited into Hribek's bank account.  Afte the direct deposit, on October 6, 2004, Hribek mailed a revocation of the release to Alexander.  Hribek has retained the funds.

Plaintiff Hribek asserts that he was discriminated against on the basis of his age and disability or perceived disability in violation of the Texas Labor Code and retaliated against pursuant to the Family and Medical Leave Act when he was constructively terminated from his job at Buc-ee's. Defendant has filed a breach of contract counterclaim asserting that Plaintiff violated the terms of the Release when he filed suit.

## II.  ANALYSIS

### A.    Standard of Review

To withstand an employer's motion for summary judgment, the plaintiff-employee must present sufficient evidence – whether direct or circumstantial (or both) – to create a genuine issue of fact that he or she was discriminated against by an employer.  *See Jackson v. TXU Corp.*, 2006 WL 509418 *2 (N.D. Tex. 2006).  The employee generally has two options for making this threshold showing: he or she may either (1) present direct evidence that raises a genuine issue of material fact as to whether the plaintiff's protected characteristic was a motivating factor for the adverse employment decision; or (2) establish a permissible inference of discrimination by relying on the burden-shifting framework erected by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.  *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (ADEA); *Fierros*

*v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir.2001) (Title VII retaliation).  In this case, Plaintiff has presented no direct evidence of discrimination, and accordingly the *McDonnell Douglas* test applies.[1]

In light of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit has adopted a "modified" *McDonnell Douglas* framework for analyzing employment discrimination claims that rely exclusively on circumstantial evidence.  *See Machinchick*, 398 F.3d at 350; *Rachid*, 376 F.3d at 312.  Under the "Modified *McDonnell Douglas*" approach, a plaintiff must first demonstrate a prima facie case of discrimination by a preponderance of the evidence.  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

## B.     Plaintiff's FMLA Claim

To make out a prima facie showing of retaliation under the FMLA, plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3)(a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3)(b) the adverse decision was made because he took FMLA leave. *Hunt v. Rapides Healthcare System*, 277 F.3d 757, 768 (5th Cir. 2002).  If plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action.  *Id.*  Once the defendant has done so, plaintiff must show by a preponderance

---

[1]Plaintiff argues that *Quantum Chemical Corporation v. Toennies*, 47 S.W.3d 473, 479-480 (Tex. 2001), applies and that under the Texas Labor Code Plaintiff must only show that discrimination was a "motivating factor" in his discharge.  Plaintiff misapprehends *Toennies*.  In *Pineda v. United Parcel Serv., Inc.*, 353 F.3d 414 (5th Cir. 2003), the Fifth Circuit noted that the *Toennies* court "meant that the [motivating factor] standard was the applicable standard in both pretext and mixed motive employment discrimination cases."  *Id.* at 419 n. 4.  Thus, Toennies, addresses a standard not applicable until the Court has reached the third portion of the *McDonnell Douglas* balancing test, where pretext or mixed motive becomes an issue.  Since Plaintiff here has failed to make out a prima facie case, *Toennies* is entirely inapplicable.

of the evidence that the defendant's proffered reason is a pretext for retaliation, or (2) that the defendant's reason, even if true, was only one of the reasons for the adverse action and that age was a "motivating factor" for the adverse action.  *Id.*; *Machinchick*, 398 F.3d at 351- 52; *Rachid*, 376 F.3d at 312.

> Plaintiff claims that after taking FMLA leave:
>
> On Tuesday, October 5, 2004, Pete Alexander, Assistant to the President, approached Plaintiff in the morning and told Plaintiff that Defendant has determined that he has lost interest in his job and asked Plaintiff for a letter of resignation.  On October 5, 2004, Plaintiff was forced to turn in his resignation letter to Defendant.

*See* Plaintiff's Original Petition ¶¶ 4.8-4.9. Based on these allegations, Plaintiff claims he was constructively discharged. A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign. *See Hunt v. Rapides Healthcare System*, *LLC*, 277 F.3d 757 (5th Cir. 2001). Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not. *Id.* at 771-772 (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)). The test is objective. The question is not whether Plaintiff felt compelled to resign, but whether a reasonable employee in his situation would have felt so compelled. *Barrow*, 10 F.3d at 297 n. 19 (citations omitted).

Plaintiff does not allege that he was demoted, that his salary or job responsibilities were reduced, that he was reassigned, or that he was harassed. Rather, he claims that he resigned because of the threat of termination.  However, the threat of potential termination is not sufficient to

7

constitute a constructive discharge. "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination." *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir.1995). The threat of termination cannot compel a person to resign because an employee has a choice of resigning or standing and fighting the threatened termination. *Id.  See also Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir.1993) (allegations that employer intentionally criticized employee's job performance and made conditional threats of termination if performance did not improve is not sufficient); *Ginn v. Tex. Wired Music, Inc.*, 2000 WL 33348246 (W.D.Tex.2000) (allegations of severe criticism and threats of termination not sufficient). Plaintiff's resignation under the factual circumstances presented by him here is not actionable.  *See Mowbray v. American General Life Ins. Cos*., 162 Fed. Appx. 369, 374 (5th Cir.2006) (unpublished opinion); *Veal v. Schlumberger Tech. Corp.*, 2006 WL 237006 (S.D. Tex. 2006). Plaintiff knew his job was in jeopardy due to performance issues and chose to resign.  He has offered no evidence that he was "forced" to resign.  Indeed, it's quite the reverse – he testified that depending upon his performance maybe he would be able to keep his job and maybe he would not, and that he was not given an ultimatum.  Hribek Depo. Pp. 138-146. The Court finds that Plaintiff has failed to establish a constructive discharge and thus has failed to establish an adverse employment action sufficient to make out a prima facie case under the  FMLA. Additionally, Plaintiff has failed to establish any relationship between his brief period of leave and his decision to resign or that he was treated less favorably than another individual because he took leave. Plaintiff testified that his job was "on the line" well before he took time off for his hernia procedure and "on the line" after he came back. Hribek Depo. pp. 178-180.  There is no evidence that any leave he took played any role in his resignation or alleged constructive termination.  Consequently, this claim fails.

**C.      Plaintiff's Age Discrimination Claim**

Under the relevant state and federal age discrimination statutes, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349-50 (5th Cir. 2005). Texas' age discrimination statute, Tex. Labor Code Ann. §§ 21.001-.556, "is substantively identical to its federal equivalent in Title VII, with the exception that 'federal law makes age discrimination unlawful under the [Age Discrimination Employment Act].'" *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005). Texas' provision for age discrimination claims, Tex. Labor Code Ann. §§ 21.001-556, was designed in part to bring Texas in line with federal law addressing discrimination. *Id.* at 462 n. 4. Accordingly, the Court will utilize federal law to analyze Plaintiff's claim. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

Under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), Plaintiff must first establish a prima facie case of age discrimination by showing that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, (iii) otherwise discharged because of his age. *Machinchick*, 398 F.3d at 350.

As explained above, Plaintiff has failed to offer evidence that he was constructively discharged, and thus cannot make out the discharge portion of the prima facie case. Additionally, Plaintiff has failed to offer any evidence of age-related animus. Defendant has offered evidence that Plaintiff was replaced by Larry Walley, who was twelve years older than Hribek. Because there is

no evidence in the record that Plaintiff was discriminated against based upon his age, the Court finds that Plaintiff cannot make out a prima facie case of age discrimination.  This claim fails.

**D.      Plaintiff's Disability Claim**

Texas law prohibits discrimination by private employers against any qualified individual with a disability. TEX. LABOR CODE ANN. § 21.051(1). Texas law is similar to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and Texas courts look to cases interpreting the ADA to decide cases brought under the Texas Labor Code.  *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473- 74 (5th Cir. 2006); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

The Texas Labor Code explicitly prohibits discrimination based on a disability.  TEXAS LABOR CODE § 21.051.  The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

"The term 'disability' means, with respect to an individual a mental or physical impairment that substantially limits at least one major life activities of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LABOR CODE § 21.002(6).  In discrimination cases such as this, in which the plaintiff introduces only circumstantial evidence, the plaintiff's prima facie case requires evidence that: (1) at the time of the employment action, he had a "disability" as defined by the statute; (2) he was qualified for the position for which he sought

10

employment or continued employment; (3) he suffered an adverse employment action because of his disability status; and (4) he was replaced by or treated less favorably than non-disabled employees. *Rodriguez*, 436 F.3d at 474; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003).

In this case, Plaintiff took vacation time to have a hernia repaired and his doctors placed lifting limitations on him for the two weeks following the surgery.  Plaintiff cannot make out a prima facie case of disability discrimination because has not demonstrated that he is or was "disabled" within the meaning of the Texas Labor Code.  Plaintiff has not shown that his hernia was a permanent or long term disability.  Temporary health issues are not qualifying disabilities under the ADA. *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1051 (5th Cir.1998).

Aware that a repaired hernia does not qualify as a "disability," Plaintiff also claims that Buc-ee's "regarded" him as having a disability.  An individual may have a viable claim that he or she was "regarded as" disabled if the individual:

(1).   has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment;

(2)   has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or

(3)   has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003) (citing *Bridges v. City of Bossier*, 92 F.3d 329, 332)(5th Cir.1996)); 42 U.S.C. §§ 12112(a) & 12102(2).  Under the "regarded as" disabled standard, a plaintiff is required to "produce sufficient summary judgment evidence to create an issue of fact that [Defendant] regarded [him] as having an impairment that substantially limited a major life activity, whether or not the impairment existed." *Hamilton v. Southwestern Bell*

*Telephone Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998). Plaintiff has presented no evidence establishing that anyone at Buc-ee's regarded him as having an impairment. In his deposition testimony Plaintiff was asked the question: "Did anybody at Buc-ee's ever say anything to you to make you think they regarded you as disabled?"  He answered "I wasn't there long enough. But, no."  Hribek Depo. at pp. 169-170.  Since Plaintiff has failed to establish that he was disabled or that anyone at his employer regarded him as disabled, this claim also fails.

**E.**     **Defendant's Counterclaim**

Defendant in this case has brought a breach of contract counterclaim asserting that Plaintiff signed a release waiving various claims against Buc-ee's and then brought this suit in violation of that agreement.  Plaintiff moves for summary judgment on that claim, asserting that the release did not comply with the Older Workers Benefits Protection Act.

This case was removed from the 21st Judicial District of Lee County, Texas, based upon federal question jurisdiction presented by Plaintiff's FMLA claim.  The Supreme Court has held that if a plaintiff drops all federal claims after removal, leaving only pendent state law claims, a federal district court has discretion to decline to exercise jurisdiction over the pendent state law claims and to remand them. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 623 (1988). Although the Court did not announce a bright-line rule, it did state that when the only federal claim is eliminated early in the litigation the district court had "a powerful reason to choose not to continue to exercise jurisdiction." 108 S.Ct. at 619.  In this case, if the District Court adopts the undersigned's Report and Recommendation and dismisses all claims with the exception of Defendant's counterclaim, which is a breach of contract claim, no federal claim exists. Accordingly, the

Magistrate Court recommends that the District Court decline to exercise pendent jurisdiction over the breach of contract counterclaim and remand it to the 21st Judicial District of Lee County, Texas.

## III. RECOMMENDATION

The Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment(Clerk's Doc. No. 18), enter judgment for Defendant on all of Plaintiff's claims, and **REMAND** Defendant's Counterclaim (including Plaintiff's Motion for Summary Judgment on that issue, *see* Clerk's Doc. No. 20) to the 21st Judicial District Court for Lee County, Texas.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

13

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of May, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE